UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KALE A. LILIENTHAL,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO. C09-5185RBL

REPORT AND RECOMMENDATION

Noted for January 29, 2010

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed, oral argument was heard on December 15, 2009, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further review and consideration.

## **INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff, Kale Lilienthal, was born in 1960. Tr. 470. She graduated from high school and completed Job Corps in telecommunications. Tr. 106. Her past relevant work includes work

REPORT AND RECOMMENDATION - 1

as a convenience store clerk, administrative assistant, cable television installer, paint mixer, janitor, and waitress. Tr. 101, 670. She has a history of criminal activity and polysubstance abuse, particularly methamphetamine.

Plaintiff first applied for disability benefits on August 3, 2000, alleging disability beginning June 2, 2000. Tr. 43, 69-71. Her application was denied and she did not appeal. Tr. 48-51. On May 2, 2002, Plaintiff filed a second application for disability benefits, alleging disability beginning March 26, 2002. Tr. 44, 72-74. Again, her application was denied and she did not appeal. Tr. 52-56.

On October 5, 2004, Plaintiff filed concurrent applications for both disability benefits and supplemental security income social security benefits, again alleging disability beginning March 26, 2002. Tr. 17, 45, 47, 75-79. Her applications were denied initially and upon reconsideration (Tr. 57-59, 61-62). She then requested a hearing before an administrative law judge ("ALJ"). Tr. 67-68.

On October 31, 2007, the ALJ held a hearing and heard testimony from plaintiff and Hanoch Livneh, a vocational expert. Tr. 648-74. On March 27, 2008, the ALJ issued a decision finding that plaintiff was not disabled (Tr. 14-29). Specifically, the ALJ found plaintiff suffered from a severe impairment caused, in combination, by "methamphetamine abuse induced mood disorder versus bipolar disorder; other polysubstance abuse, allegedly in remission; borderline personality disorder and posttraumatic stress disorder, by history." Tr. 19. Despite associated nonexertional limitations, the ALJ found plaintiff retained the ability to perform past relevant work as a janitor or paint mixer, and thus, plaintiff's applications for benefits were denied. Tr. 26-29.

REPORT AND RECOMMENDATION - 2

On February 20, 2009, the Appeals Council denied Plaintiff's request for review, Tr. 6-9, making the ALJ's decision the Commissioner's final decision. 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff specifically argues: (i) the ALJ's decision is invalid due to the ALJ's failure to sign the decision; (ii) the ALJ failed to properly evaluate the medical evidence; (iii) the ALJ failed to properly evaluate the opinions of other medical sources; (iv) the ALJ failed to properly evaluate plaintiff's testimony regarding her symptoms and limitations; (v) the ALJ failed to properly evaluate lay witness evidence; (vi) the ALJ improperly determined claimant's residual functional capacity ("RFC"); (vii) the ALJ erroneously found that plaintiff can perform her past relevant work; (viii) the Commissioner failed to meet the burden of showing that plaintiff can perform any work in the national economy; (ix) the case should be remanded for an award of benefits; and (x) if the matter is remanded for a new hearing, it should be assigned to a different ALJ. Plaintiff's Opening Brief, Doc. 13.

After reviewing the matter, the undersigned finds the ALJ failed to properly consider the medical evidence and failed to properly consider the lay witness testimony. Due to these errors the matter should be remanded to the administration for further consideration.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 3

Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## **DISCUSSION**

After carefully reviewing the record, oral argument, and the parties' briefs, the undersigned finds the ALJ erred when he considered the medical evidence, specifically with regard to plaintiff's alleged bipolar disorder and evidence of manic and depressive symptoms. The ALJ also erred when he failed to properly consider the lay witness statements.

Due to the errors above, the undersigned finds the matter should be remanded to the administration for further consideration. In light of the medical evidence being reconsidered the

ALJ should consequently reconsider and reevaluate each of the five steps involved in the administrative process, in addition to plaintiff's testimony and the lay witness statements. This court sees no reason why this matter should not be re-referred to the original ALJ for reconsideration, as there is no evidence of bias or other disqualifying reasons.

### A. The ALJ Erred In His Evaluation Of The Medical Evidence Related To Plaintiff's Bipolar Disorder

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

REPORT AND RECOMMENDATION - 5

Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

After reviewing the arguments and the record, the undersigned finds the ALJ's review of the medical evidence and his findings are not properly supported by the record. For instance, the ALJ rejected plaintiff's alleged bipolar disorder, despite the fact that every diagnosis by an examining source includes a finding of bipolar disorder. Rather than accept the persuasive medical opinion evidence, the ALJ adopts the onetime opinion of a non-examining physician, whose opinion is based solely on a review of the medical records. Tr. 19, 28. The ALJ concludes that plaintiff's bipolar disorder symptoms could be attributed only to a "methamphetamine abuse induced mood disorder." Tr. 19. This conclusion is not supported by substantial evidence in the record.

After reviewing the medical evidence the ALJ wrote:

> I have considered the numerous fill-in-the blank mental capacity form submissions from consultative examiners for GAU, with all assessed levels predominantly derived from the claimant's non-credible claims of impairments and symptomology. I give those check-off box psychological assessments little weight as they are not consistent with or supported by the medical evidence of record, as detailed above. Overall, I find the record clearly reflects the claimant's mental functioning and capacity for manipulation are at significant higher levels than she alleges.
>
> I have also considered the State Agency non-examining medical consultants Mental Residual Functional Capacity (MRFC) of August 30, 2005. In comparison to all the medical evidence of record reflected in detail above, I give controlling weight to the State Agency non-examining medical consultants MRFC assessment, finding it both consistent with and supported by the medical evidence of record, through the date of this decision (Ex 16F).

Tr. 28.

The ALJ's reliance on the State Agency consultant, Dr. Collingwood, is misplaced. Dr. Collingwood states, "MER supports a diagnosis of Mood D/O NOS vs Bipolar D/O vs Substance Induced Mood D/O, PTSD, Borderline Personality D/O, and Polysubstance Abuse/Dependence – rpt'd in remission." Tr. 549. However, Dr. Collingwood's review of the record is incomplete. The medical record indicates Dr. Margaret Smith, a psychologist, was the only mental health examiner and evaluator to specifically diagnose a mood disorder. Tr. 485. Dr. Smith made this diagnosis on December 2, 2004, and significantly, Dr. Smith evaluated plaintiff on at least three subsequent occasions, on August 3, 2005, February 28, 2007, and January 28, 2008. Tr. 605, 596, & 625, respectively. In each of her evaluations she diagnosed bipolar disorder. Dr. Smith is the only medical examiner on record that has evaluated plaintiff more than one time. The court notes that only in her first and second evaluation did Dr. Smith make the conditional statement that plaintiff's bipolar diagnosis was based on "client report", and Dr. Smith dropped this condition on the bipolar diagnosis on her most recent reports. Dr. Smith also dropped the mood disorder diagnosis from her three most recent evaluations.

Despite the ALJ acceptance of Dr. Smith's early mood disorder diagnosis and Dr. Smith's early statements that she felt plaintiff could likely return to work with appropriate mental health treatment, Tr. 22, 487, 607, the ALJ rejects Dr. Smith's later evaluations. Dr. Smith's most recent evaluation clearly indicate plaintiff suffers from a bipolar disorder and Dr. Smith clearly states her belief that plaintiff's mental impairments would not allow her to work for pay, Tr. 598, 627. Curiously, the ALJ rejects or limits Dr. Smith's December 8, 2004 evaluation as merely a "check-off box" assessment, compared to a one-time evaluation by Dr. Schneider, Tr. 22, and the one-time non-examining review and "check-off box" form completed by Dr. Collingswood. Tr. 28. Significantly, the ALJ fails to acknowledge Dr. Smith's later "check-off

REPORT AND RECOMMENDATION - 7

box" evaluations, which are all accompanied by detailed findings and notes from Dr. Smith. Tr. 599-601, 608-10, 628-29. In February 2007, when Dr. Smith first dropped the conditional "by client report" on the bipolar disorder diagnosis, Dr. Smith wrote, "Ms. Lilienthal has been diagnosed with a Bipolar I disorder and her self report is consistent with this diagnosis." Tr. 599. In February 2008, Dr. Smith stated, "Her presentation is consistent with her diagnosis of Bipolar I." Tr. 628.

Dr. Smith's opinions and longitudinal evaluations are entitled to greater weight than provided by the ALJ. The ALJ did not address Dr. Smith's statements accompanying her evaluations, and thus, the ALJ did not properly address the medical evidence. It is problematic that the ALJ only accepted Dr. Smith's first evaluation, but ignores the more detailed later evaluations. For example, the ALJ wrote:

> Dr. Smith assessed bipolar disorder, "by report," with posttraumatic stress disorder and personality disorder, not otherwise specified. The claimant's GAF score was assessed at 60, indicative of moderate difficulties in social, work or classroom settings, but still functional. Despite the questionable diagnoses of bipolar and polysubstance abuse "in remission" reports by the claimant plus the moderate GAF score, Dr. Smith next assessed the claimant, in the check-off box functional capacity section, as having "difficulty working consistently without interruptions due to manic and depressive symptoms." (Ex. 12F/pgs 1-6).
>
> I find no evidence of manic and depressive symptoms.

Tr. 23.

The above statement by the ALJ clearly shows he did not acknowledge Dr. Smith's later evaluations and her detailed notes that accompanied her later evaluations. By not acknowledging and discussing the details of Dr. Smith's opinions that were developed over a three-year period the ALJ failed to give appropriate weight to the only mental health examiner that examined and valuated plaintiff more than once. Moreover, the ALJ's statement that he did not find any

REPORT AND RECOMMENDATION - 8

"evidence of manic or depressive symptoms" further shows that he erroneously went beyond the medical record and appears to offer his own medical assessment.

In sum, the ALJ's own assessment of plaintiff's bipolar disorder cannot stand. The ALJ impermissibly substituted his opinion that the bipolar disorder was merely a "methamphetamine abuse induced mood disorder", which is not supported by substantial evidence in the record. The only mental health evaluator that specifically diagnosed a mood disorder was Dr. Smith, whose opinions the ALJ failed to properly acknowledge. Dr. Smith clearly dropped the mood disorder diagnosis, and Dr. Smith never substituted the mood disorder for a bipolar disorder. Overtime Dr. Smith clearly diagnosed plaintiff as suffering from an unconditional bipolar disorder. Dr. Collingswood's one-time medical review and evaluation does not constitute substantial evidence for the ALJ to rely upon. The ALJ failed to evaluate Dr. Collingswood's review, as well as the other medical evidence on record, along with Dr. Smith's four evaluations over the three or four year period.

The matter should be remanded to the administration to allow the administration the opportunity to properly consider plaintiff's bipolar disorder and the possible material affect of plaintiff's drug abuse. On remand it will be necessary to review all the medical evidence, including the statements and medical records from plaintiff's mental health counselors and therapists, which appear to be significant and probative.

## B.     *The ALJ Failed To Properly Consider Lay Witness Evidence*

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must

cite reasons germane to the witness in order to properly discredit lay witness testimony. Schneider v. Commissioner, 223 F.3d 968, 976 (9th Cir. 2003).

Here, the ALJ improperly rejected the lay witness statements provided by Carmen Smogar, plaintiff's sister, and Tiare Gray, plaintiff's friend. The ALJ stated that he discredited the statements because they did not "acknowledge the existence of the claimant's longstanding and pervasive polysubstance abuse with the legal consequences and functional impact from her illicit polysubstance usage." Tr. 27. The ALJ's statement is false. Both Ms. Smogar and Ms. Gray did indeed acknowledge the existence of Lilienthal's polysubstance abuse. (Tr. 138-39, 179, 182). Accordingly, the ALJ's primary reason for rejecting the lay evidence is not germane.

## C. *Plaintiff Has Not Demonstrated Any Convincing Reason To Assign The Matter To A Different ALJ*

Finally, the court must address Plaintiff's request that the court direct the matter to a different ALJ on remand. The selection of a new ALJ on remand has been considered to be within the discretion of the Commissioner of the Social Security Administration. Hartnett v. Apfel, 21 F.Supp.2d 217, 222 (E.D.N.Y.1998) (*citing* Travis v. Sullivan, 985 F.2d 919, 924 (7th Cir.1993)) ("As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make."). There have been several instances, however, in which courts (including this court) have ordered or recommend that the Commissioner assign a case to a different ALJ on remand. In Kolodnay v. Schweiker, 680 F.2d 878, 879-80 (2d Cir.1982), the court remanded to a new ALJ because the original ALJ had failed to adequately consider the medical evidence. *See also*, Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir.1996) (remanding to a new ALJ because of the original ALJ's failure to support his findings with

REPORT AND RECOMMENDATION - 10

evidence reflected that "the process was compromised."); <u>Ventura v. Shalala</u>, 55 F.3d 900, 904 (3d Cir.1995) (remanding to a new ALJ because of original ALJ's offensive conduct).

Remand to a different ALJ is based on the premise that impartiality of the ALJ is "integral to the integrity of the [disability review process]." <u>Miles</u>, 84 F.3d at 1401 (internal citations omitted). The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983). Remand to a new ALJ is necessary in those situations which compromise that integrity. Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate. Factors for consideration in this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. <u>Sutherland v. Barnhart</u>, 322 F.Supp.2d 282, (E.D. NY 2004); *see also* 20 C.F.R. § 404.940.,

Here, Plaintiff does not point to any specific conduct of the ALJ, other than his adverse decision, to warrant remand to a new ALJ. The ALJ did not demonstrate any bias or prejudice in his decision. Therefore, it is inappropriate for the court to remand the matter a different ALJ, although the administration retains full discretion to do so if it so chooses.

## **CONCLUSION**

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this

REPORT AND RECOMMENDATION - 11

Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 29, 2010, as noted in the caption.

DATED this 21st day of December, 2009.

*/s/ J. Richard Creatura*
J. Richard Creatura
United States Magistrate Judge